Controversy Over Part 1 of 8 On behalf of Corcomore, may it please the Court, the importance of the unifying interpretation of Lanham Act Section 14, along with a review of the Board's errors in the Rule 37 sanction as amplified by unwritten inherent powers, provide, I believe, strong reasons to reverse on the Lanham Act issues and remand and to vacate the sanctions order instead of having a ruling on the merits. Now, I'd like to start back with the beginning of the case. At the outset, SFM filed a minute petition that pled assertions about Corcomore and the use of its mark that were mistaken, that were unprovable. And those allegations were controverted from the outset. And they were particularly important to Section 14 standing if the Board chose to apply the causal nexus as had been later applied in the Belmora cases from the Fourth Circuit. So the strategy of controverting the facts and raising the law in merits motions coupled with private overtures to settle the case were the strategy chosen. The strategy, of course, failed. But the use of merits motions and then private settlement discussions. This was the settlement where you wanted them to pay you money, right? In exchange for two registrations of longstanding marks, yes, Your Honor. So there was going to be an exchange there. Now when the Lexmark motion was made, that's the first motion challenging standing, the Board simply said Lexmark doesn't apply because it's a likelihood of confusion action under Section 43A, and this is a Section 14 likelihood of confusion. They went no further in terms of trying to analyze what the Fourth Circuit said were the close, you know, close wording, similar wording in 43A and 14. So then we had two further motions, I'll call them the Belmora motions. When I sent the settlement letter, I had no idea that Belmora was out there in the Eastern District and was going to later be in the Fourth Circuit. But two years later, that's the two years from the time the first Lexmark motion was decided until the morning. There's two general issues here. And just to bring a little bit more clarity to the argument, you're arguing that SFM lacked standing to bring the cancellation application, correct? Correct. And then you're also arguing that the Board lacked authority to terminate the proceedings or enter a default judgment as a form of sanction. That's correct. So let's go with the standing issue first. Yes, Your Honor. So the Board rejected Lexmark. It then waited over a year and a half to see what the Fourth Circuit would do in the Belmora cases. And after receiving the ruling that supported Corcomore's argument in favor of Lexmark, the Board simply said it would not consider it and it moved on. It did so because of this Court's decision in Cuba Tobacco. The Board's view is that two cases, the two decisions are in conflict or irreconcilable. I don't totally accept that, but that is their view. And if you accept their view, it creates what I believe is a rather untenable situation. If a party files a cancellation action in Alexandria in federal court, it must adhere to the Fourth Circuit's ruling in Belmora. You go two blocks away, as it were, to the TTAB office and you file a petition for cancellation seeking exactly the same relief on exactly the same facts, and you could ignore Lexmark and Belmora. And similarly, take the next step is if Belmora had gone, taken the decision from the TTAB to this Court, what would have been the rule? And if Corcomore had taken this case to the Eastern District of Virginia, then certainly Lexmark would have been the rule. So I don't believe that that's a situation that should be allowed to stand. When Congress passed the review statute, 15 U.S.C. 1071, it created co-equal appellate review jurisdiction in this Court and in the Fourth Circuit. This Court under Section A, the Fourth Circuit under B through cases that come from the Board to the Eastern District of Virginia into the Fourth Circuit. So it is highly important that both circuits interpret the same Lanham Act statute uniformly so that we have consistent results. And to find uniformity, we would look to the Supreme Court and where in the Lexmark case. So whether it's the holding in Lexmark or it's the use of the traditional methods of statutory interpretation that are followed in the Lexmark case, I urge the Court to consider how to reconcile the Belmora case and the Cupid Tobacco case. Now what I suggested is that Cupid Tobacco really is about whether or not a Cuban company is entitled to go to court or go to the Board and seek to cancel a registration. It's really just gives a rather short discussion of the second prong and that's the issue here is the likelihood of being damaged as a result of actual use of the mark by the other party, in this case Corcomore. Now since at the starting point they had argued or pleaded rather facts about Corcomore that are untrue or cannot be proved and they've had to kind of morph into some other version of facts that are not in the complaint, I think the Board erred in sort of taking that as true and dismissing Lexmark. So Cupid Tobacco again, it's about whether or not this Cuban company who's embarked from doing business in America has a cause of action. The Court says yes, the redressability prong, the first prong of Lexmark is met. The second prong is either not discussed or it is distinctly different from this case. The being damaged prong was about... What about 1064? Did S&P complete sufficient facts under 1064 to have standing? No, Your Honor. They did not lead the two prongs of Lexmark, specifically the second prong. Outside of Lexmark, I'm talking about 1064. Is there sufficient facts that were pledged? It depends on the interpretation of being damaged in that statute. So being damaged meant one thing in Lexmark and Billmore. Being damaged has historically meant just a reasonable belief. Being damaged, that's a standard under 1064? Yes, Your Honor. That's a statutory term. All right. So I believe this Court has both review authority as well as supervisory authority over proceedings in the TTAB, and I would ask that it exercise that authority to distinguish Cupid Tobacco as a case not on point while Billmore is on point and remove any idea in the Board's mind that there is a conflict between the two. Now, I think the transitioning, I think the further problem is that the motions that were because standing has been held to be jurisdictional, and that ask the Board to apply a federal court precedent cannot be deemed frivolous or sanctionable bad faith. I believe they are objectively reasonable and should be encouraged, both that as well as settlement. Now, I want to focus in particular on Rule 37B sanction, which erroneously ruled as a supplemental discovery was never sent and never received, and that's an erroneous finding that I think is foundational to the Rule 37 sanction, and therefore, that sanction B should be reversed. So here's the correct facts. Apart from the merits that you're entering now, did the Court have authority to issue sanctions in this case? Under 37B, if it fits that, yes. But the foundational part was the finding on page, I think it's 87 of the appendix, that the supplemental discovery, which was required by the order compelling supplemental discovery, that that was never sent, never received. But there's no dispute that on the date due, that an envelope was postmarked to SFM's lawyers. It was delivered. They actually received it, and inside of it, it's undisputed that it contained several things. It contained Corcomore's supplemental responses to Rule 34 requests, which referred to the documents on a thumb drive. It included supplemental responses to interrogatories. So it was actually served, it was actually received, and for the Board to conclude that no responses and no documents were timely and actually served and actually received is clearly erroneous. And for that reason, any sanction based on that erroneous fact-finding should be reversed. The regulation requires you to submit the discovery or serve it by email, right? That is the general rule that became effective in 2017. And so, if I had to do over again, and I had a way to email, you know, a 12 megabyte file, then... Why didn't you use a file transfer site? That's what the other side did, right? They do have, in their large firm, a section of their network, I assume, that allows that. I don't have that. I'm a solo, you know, I use a paper calendar. So, you are correct, Your Honor, I should have done better on that. I should have done better. But I think moving into my next argument about why the sanction is incorrect is because it was an abuse of discretion. The Board did not consider the most relevant factors that must be considered before such a harsh sanction. The first one being, there was no material non-disclosure. They did actually get the documents. In fact, the documents, most of them had already been produced previously. They just didn't have Bates numbers on them. So, the supplemental production was a Bates stamp document. So, there was no non-disclosure. Secondly, there was no prejudice. In fact, if you word search the court's final opinion, you will not find the word prejudice. There is no finding of prejudice. There's no prejudice tied to something material not being disclosed. And I think that makes this case stand quite distinct from cases. This Court has heard on spoliation of evidence where people destroy things that are material, that were inequitable conduct cases, where people do not disclose references. Well, I guess the theory is if, you know, it sounds like the Board concluded that you had been really doing everything you could to delay the proceeding and obstruct the progress of the proceeding. I'm not saying you did, but let's just say that's the way they looked at it. And the Board had lost total confidence that you would ever comply with their orders, their discovery orders and other orders. Then, in that sense, the other side is prejudiced by, you know, your side's inability to actually follow the rules. The key point I think you mentioned there was delay. So the Board found that I had delayed the case, or Corcoran had delayed the case. If you actually look at the chronology again, the case is filed, the Lexmark motion is filed, it's decided in April of 2015, and two years later they decide the Belmora case, or they decide what to do about Belmora. So you've got over a two-year time window, if you want to call it delay, that was occasioned by the Belmora cases and by the Board's decision to stay the case pending the Fourth Circuit's ruling. After that, they did not hear any of my motions. They would not hear Corcoran Moore's motion to compel. Despite multiple requests, they would not hear a motion for summary judgment. They wouldn't hear any of the motions. So there was no suspension of the proceedings for the motions that were filed because they disallowed them. So then it goes to the end. And the last thing is, in time, the only thing that happens in the time between the motion compelling supplement of discovery and the final order is this ruling that it was never actually sent, never actually received. So I believe the last thing is the order itself, compelling discovery, specifically said, here's the lesser sanction. It's not produced, it's going to be precluded. That was the sanction that was warned. There was no warning of the terminating sanction that the Board ultimately entered. That just comes out of their opinion. The second aspect of the order, compelling discovery, says, and I quote, that any potential prejudice can be remedied by extending the period, by extending the discovery period as necessary. Therefore, if they said, oh, well, you sent this by mail on Thursday and we didn't get it until Saturday. You sent it by mail on Thursday and then we had you email it to us on the next day, Friday. The attorney could have said, well, we'll give you more time. We'll give you more time. OK. I'll conclude at that point. Thank you. Thank you. Counselor Wilberg. The two issues before this court are straightforward and simple. SFM had a right to petition the TTAB to cancel the Sprout Mark under Section 14 of the Lanham Act. And second, the Board acted within its authority when it sanctioned Corcomore for repeatedly ignoring Board orders and for other egregious behavior. Turning first to issues dealing with the right to petition. Corcomore's assertions about disputed facts regarding use distract from the properly pled basis for SFM's petition for cancellation. Simply looking at the trademark registrations at issue provides a proper basis to petition the TTAB for cancellation. Specifically here, SFM has pled that it owns trademark registrations for Sprout's and for Sprout's Farmer's Market in connection with retail grocery store services. It also pled that Corcomore owns a federal registration for Sprout for use in connection with vending machine services. Vending machine services fall under International Class of Good 35 as does grocery store services.  And dealing with nearly identical marks. That is included in the amended petition. Turning to the law that allows SFM the right to petition. SFM's right to petition is governed by Section 14 of the Lanham Act. And Section 14 of the Lanham Act states that the cancellation procedure is available to any person who believes that he or she will be damaged by the registrations. This court recently in Empresa Cubana cited Lexmark and noted that Lexmark clarified issues sometimes discussed in terms of standing, which are more appropriately discussed and viewed as interpretation of statutory causes of action. Here, the statutory cause of action is Section 14 of the Lanham Act and that's a statute that must be interpreted as instructed by Lexmark. As a result, Lexmark does not overrule or undermine Section 14 jurisprudence. Instead, the two can appropriately coexist with no conflict as the Federal Circuit did when it ruled in Empresa Cubana. What about the Fourth Circuit opinion though? It found otherwise, right? No, Corcomore's reliance on Belmora is misplaced. First, the ultimate holding of Belmora favors SFM and that Belmora held that there was standing before the TTAB. And that case found that the Lanham Act authorized a foreign manufacturer to bring a trademark cancellation, which ultimately supports SFM's right to bring its own cancellation. Did the Fourth Circuit use our standard or did it follow the Lexmark articulation? Yes, but when discussing Lexmark in Belmora, that's done in connection with the Section 43A false association claim analysis. And in the section of the decision that addresses the cancellation brought under Section 14, it doesn't get into which standard should apply. Instead, it's a very short section of the decision and it said that the district court improperly read a use requirement into the Lanham Act. And for those reasons, it finds that there was standing. So Belmora focuses on the use requirement, which is not present here and not at issue. And third, Belmora is a Fourth Circuit case and it's not controlling on issues of the TTAB. Thus, it was not a reversible error for the TTAB to decline to consider Belmora, especially when the TTAB applied Federal Circuit precedent that is squarely on point. And under the precedent that is on point, SFM has standing. SFM has at least two real interests in the proceedings. First, SFM and its related grocery stores have a trademark registration. In Cunningham v. Laser Gulf, this court explained that registrations and the products sold under the mark they registered are sufficient and necessary to establish a direct commercial interest in standing to petition for cancellation. Thus, under Cunningham v. Laser Gulf, SFM has standing. As a second basis for its interest in the proceeding, SFM and its related companies operate grocery stores using the Sprouts and Sprouts Farmers Mark registrations. Under Section 15 U.S.C. 1055, the use of a mark by a licensee or related companies inures to the benefit of the registrant. Thus, SFM, as the registrant, has a real interest in the reputation of stores using the Sprouts Mark. So let's assume you have standing. What about the authority of the board to issue sanctions in this case? Yes, the board has two grounds of authority for issuing the sanctions it issued in this case. First, it has express authority under Trademark Rule 2.120. Trademark Rule 2.120 allows the board to issue sanctions in discovery disputes, and that rule explicitly incorporates Federal Rule of Civil Procedure 37. Federal Rule of Civil Procedure 37 identifies default judgment as a sanction that can be entered. And we endorse that in Benedict, right? Yes. Benedict is an example where this court has held that the dismissal of a cancellation, actually under less egregious circumstances, is an appropriate sanction. So when the board issued its sanction here, it was relying on express rules, as well as this court's authority. Thus, it was not an abuse of discretion. Something else to point out is that there is not a requirement to find that the documents not produced were material. What the rules say is that if you have repeated violations of a board order and lesser sanctions are not appropriate, further sanctions can be issued. So here's the question. Was there a repeated violation of a board order? And this can be addressed by looking through the appendix. And if we turn to the table that's outlined by the board, which is at 87, the board, in a detailed way, identifies multiple violations. You said 87? Appendix 87. And it carries over to 88. The board identified what it found to be multiple violations of its order. Thus, the sanction was not based on one misproduction of documents. The first example that the board cites is that it ordered respondent to appear for a 30 v. 6 deposition. Respondent refused to appear for that deposition, despite the board's order to do so. The board, in its decision, also notes that when petitioner attempted to reschedule the deposition, Corcomore cert objections and again refused to appear, despite the previous order to show up for the deposition. That's one example that would support the sanction. The board continues and identifies other details of its order that Corcomore did not apply with. So the notion that this was unfairly based on one errant email or one set of documents is just not true. And it misrepresents the board's very careful analysis and decision. Further, the issue of whether a lesser sanction would have been appropriate. The idea that more time should have been given or that there was a lesser sanction that would have changed this case. Well, the board addressed that as well. The board issued the first sanction in this case, which starts at Appendix 16. And the sanction is discussed in that order denying a motion to dismiss at Appendix 23. This first sanction was violated. Is there a restriction on being able to file papers or motions? It is. OK. That sanction was violated. And the board issued a reminder of that first sanction, which can be found at Appendix 29. That sanction was ultimately lifted in the case. But then a second sanction was entered. The second sanction was for abuse of discovery in filing frivolous motions. And that can be found at Appendix 71. That was violated. And before issuing any type of draconian order, the board reiterated the second sanction, which can be found in its decision at pages 73 through 74. In that same order, it notes the objection to the case schedule was a violation of its sanction. And again, reminds counsel what needs to be done to comply with the order. So there were two earlier sanctions issued. Both sanctions were violated. And the board provided reminders of that violation. When the bad behavior continued, a third board sanction was issued, which is why we're here today. So the idea that there were repeated violations of board sanctions is present here. And there's a reasonable basis to believe that lesser sanctions would not be appropriate. That itself is one basis to support this final judgment. The other side says, well, the order in granting the motion to compel, the board suggested there could be a sanction like preclusion or something like that. Yes. There are lesser sanctions along the way that the board suggested. But in looking at its decision, particularly pages 87 and 88, it identifies that there are multiple violations. So the lesser solution that you've brought up would not be appropriate for the violation of not showing up to a deposition. That's never been rectified. So how would you say this case compares to our case in Benedict? From what I understand of the facts in Benedict, I believe these violations are more egregious. While it's true that the discovery violations are similar to those in Benedict, the board's inherent authority section in its decision also identifies quite egregious behavior that I don't believe was present in Benedict. Some of that egregious behavior includes hanging up on counsel during meet and confers, refusing to meet and confer, outright refusing to read or open emails from petitioners, counsel for years. That behavior is summarized by the board at Appendix 89. And I think here we have Benedict really focused on the discovery violations under Trademark Rule 2.120. But this case, we also have the sanction for the egregious behavior that the board found. And that is discussed in the board's decision at Appendix 89 through 91. And that is a completely separate ground for issuing the sanction of a dismissal here. Unless the court has any further questions, SFM asks that you affirm the board's decision. Thank you. Mr. Thomason, you have a little bit under two minutes. Thank you very much. I just wanted to mention the Benedict case that the court just asked about. And Benedict, the pro se plaintiff, did not answer any discovery whatsoever, ever, for two years. It did not respond to a motion to compel. It did not comply with the motion to compel. To me, that would probably be egregious and would explain what Benedict says. I think a good example, too, is counsel's SFM's brief cites the case Arbrutin. And the Arbrutin case is something I'm not that familiar with, which was interference practice. There was some requirements. Something had to be done by a certain date. The question was, you didn't do it, so what's the appropriate sanction? In Arbrutin, the sanction was default and dismissal. Arbrutin, though, cites a Gerritsen case that had similar facts, where there was no sanction because there was no prejudice. There was no discussion of a lesser sanction. Can you explain your side of the story on the deposition and how the deposition never ended up happening? After over a year that it was noticed. The deposition was noticed originally and didn't occur. So then there's an order that says you'll have the deposition. Then both parties served deposition notices and it led to a stalemate. They would not produce anybody, so I said I wouldn't produce anybody. I then opted for settlement discussions. So there's settlement discussions the week leading up to when the deposition date is. The settlement discussions did not result in a settlement. I filed a motion for protective order. The board, in 75 minutes... Same day they denied it. Yeah, I wasn't aware of it. It was at lunch hour. They sent an email out. I didn't know it was there. It was over and done with in 75 minutes. So in real answer to your question, what's really going on is I mismanaged the stalemate. It was a stalemate where no party was going to do what the other party was requesting and their strategy was accepted by the court. I'm not defending that. I'm saying I could have done better and should have done better on that. But the order says we can extend the period. The difference here between this case and Benedict is that here you actually violated sanctions orders. By filing documents? No, the court issued a sanction order and you violated that one and then a second one. Those two that I think you're referring to both said no unpermitted filings. So violated by filing a request to make a motion I did not believe was egregious or consummation. I made a formal written request. May I file a motion? And they said no, that violates the order. Even asking on a piece of paper is a violation of our sanctions order. So again, in hindsight, I should have done that. I really took it as similar to courts where you pre-file motions and then the magistrate calls you up and says let's talk about this. Don't waste your time with this motion and he never schedules it. So you submit it. If you look at my request for a motion to compel I said let's have a conference. I'm available for a conference. If there's anything else you need for the conference let me know. But I submitted all the paperwork that had been required. So in other instances I did. But I do take exception when the court says that it was a frivolous motion when I asked the board to follow Bill Moore. I think it's a frivolous it's not frivolous to ask for permission to do something even if that's not what exactly the order said. And I did call the interlocutory attorney and tried to set things up. So in closing I would just say the board has no inherent authority. And I would cite file USC 558B. The last thing is in submitting the case and the issues on the record to the court I want to thank the court for giving me this opportunity to discuss it. Thank you. Our next case is Appleton v. Unilock 2017, LLC number 19-1636.